# NOTE

Loan Number :

SEPTEMBER 14_____, 2001     LAWRENCEVILLE_____, GEORGIA_____
[Date]                        [City]                    [State]

1699 BRAEBURN DR, ATLANTA, GEORGIA 30316_____
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. **$79,000.00** (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **Decision One Mortgage Company, LLC.** I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **9.42%**.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **19TH** day of each month beginning on **OCTOBER 19, 2001.** I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **SEPTEMBER 19, 2031**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **6060 J.A. Jones Drive, Suite 1000, Charlotte, North Carolina 28287** or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. **$659.67**.

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **FIFTEEN** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.0 %** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

CHL

MULTISTATE FIXED RATE NOTE--Single Family--        .ED INSTRUMENT Form 3200 1/01
*(page 1 of 2 pages)*

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, court costs and 15% of the principal and interest then due in payment of the Note Holder's attorneys' fees.

**7.  GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9.  WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10.  UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

Without Recourse
For valuable consideration
Decision One Mortgage Company, LLC
Assigns all rights, title and interest to

Decision One Mortgage Company, LLC

*Evelyn Reynolds*
LOAN PROCESSOR

_____ (Seal)
CYNTHIA ANDERSON-GRAYSON                    -Borrower

_____ (Seal)
                                            -Borrower

_____ (Seal)
                                            -Borrower

*[Sign Original Only]*

**MULTISTATE FIXED RATE NOTE**--Single Family--**Fannie Mae/Freddie Mac MODIFIED INSTRUMENT   Form 3200  1/01**

*(page 2 of 2 pages)*

Loan Number

## PREPAYMENT RIDER TO NOTE

THIS PREPAYMENT RIDER is made this __14TH__ day of __SEPTEMBER__ ,2001 , and is incorporated into and shall be deemed to amend and supplement the Note of the same date given by the undersigned (the "Borrower") in favor of **Decision One Mortgage Company, LLC** (the "Lender").

**4.  BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment". When I make a prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a partial prepayment without paying any prepayment charge. If I make a full prepayment within one (1) year of the date of this Note, I agree to pay a prepayment charge of 5% of the original principal amount of the loan; if I make a full prepayment more than one (1) year but within two (2) years of the date of this Note, I agree to pay a prepayment charge of 5% of the original principal amount of the loan; if I make a full prepayment more than two (2) years but within three (3) years of the date of this Note, I agree to pay a prepayment charge of 5% of the original principal amount of the loan. The Note Holder will use my prepayments to reduce the amount of principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

In the event that the Note is ever sold, assigned or transferred to the Federal National Mortgage Association or the Federal Home Loan Mortgage Corporation, this Prepayment Rider To Note and expressly its amended provisions with respect to a prepayment charge as a percentage of the original principal amount of the loan shall thereupon terminate and shall be of no further force and effect. Any such termination of this Prepayment Rider To Note shall be effective immediately after the date of any such sale, assignment or transfer, and thereupon and thereafter the Note shall be in full force and effect in accordance with its original terms as if this Prepayment Rider To Note had never been incorporated into or amended the Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Prepayment Rider.

_____ (Seal)
CYNTHIA ANDERSON-GRAYSON                          -Borrower

_____ (Seal)
                                                  -Borrower

_____ (Seal)
                                                  -Borrower

GEORGIA PREPAYMENT RIDER - FIXED RATE, FIRST MORTGAGE

After Recording Return To:

Decision One Mortgage Company, LLC
6060 J.A. Jones Drive, Suite 1000
Charlotte, North Carolina 28287

This instrument was prepared by

Deed Book 12533 Pg    1
Filed and Recorded Oct-09-2001 07:56am
2001-0131417
Georgia Intangible Tax Paid $237.00

*Linda Carter*

Linda Carter
Clerk of Superior Court Dekalb Cty, Ga.

---

[Space Above This Line For Recording Data]

Loan Number

# SECURITY DEED

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)** "**Security Instrument**" means this document, which is dated **SEPTEMBER 14, 2001**, together with all Riders to this document.

**(B)** "**Borrower**" is CYNTHIA ANDERSON-GRAYSON. Borrower is the grantor under this Security Instrument.

**(C)** "**Lender**" is Decision One Mortgage Company, LLC. Lender is a LIMITED LIABILITY COMPANY organized and existing under the laws of **NORTH CAROLINA**. Lender's address is **6060 J.A. JONES DRIVE, SUITE 1000, CHARLOTTE, NORTH CAROLINA 28287**. Lender is the grantee under this Security Instrument.

**(D)** "**Note**" means the promissory note signed by Borrower and dated **SEPTEMBER 14, 2001**. The Note states that Borrower owes Lender SEVENTY-NINE THOUSAND AND 00/100ths Dollars (U.S.$79,000.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **SEPTEMBER 19, 2031**.

**(E)** "**Property**" means the property that is described below under the heading "Transfer of Rights in the Property."

**(F)** "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(G)** "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider    ☐ Condominium Rider    ☐ Second Home Rider
☐ Balloon Rider    ☐ Planned Unit Development Rider    ☐ Other(s) [specify]
☐ 1-4 Family Rider    ☐ Biweekly Payment Rider

**(H)** "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**GEORGIA**--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3011 1/01 *(page 1 of 11 pages)*

Deed Book 12533 Pg    2

(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(K) "Escrow Items" means those items that are described in Section 3.

(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to Lender and Lender's successors and assigns, with power of sale, the following described property located in the _____County_____ of _____DEKALB_____ :
                                              [Type of Recording Jurisdiction]      [Name of Recording Jurisdiction]

SEE ATTACHED SCHEDULE "A"

which currently has the address of  __1699 BRAEBURN DR_____
                                                                        [Street]

__ATLANTA_____ , Georgia ____30316____ ("Property Address"):
        [City]                                    [Zip Code]

GEORGIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3011 1/01  *(page 2 of 11 pages)*

Deed Book 12533 Pg   3

TO HAVE AND TO HOLD this property unto Lender and Lender's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be

GEORGIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3011 1/01  *(page 3 of 11 pages)*

Deed Book 12533 Pg    4

escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower

GEORGIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3011 1/01  *(page 4 of 11 pages)*



to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

GEORGIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3011 1/01 *(page 5 of 11 pages)*

Deed Book 12533 Pg    5

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property (as set forth below). Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, making repairs, replacing doors and windows, draining water from pipes, and eliminating building or other code violations or dangerous conditions. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

**GEORGIA**--Single Family--Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**          Form 3011 1/01  *(page 6 of 11 pages)*

Deed Book 12533 Pg    6

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

GEORGIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3011 1/01    *(page 7 of 11 pages)*

Deed Book 12533 Pg    7

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

GEORGIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3011 1/01  *(page 8 of 11 pages)*

Deed Book 12533 Pg    8

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

**GEORGIA**--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3011 1/01  *(page 9 of 11 pages)*

Deed Book 12533 Pg  9

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by Applicable Law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by Applicable Law.

If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Waiver of Homestead.** Borrower waives all rights of homestead exemption in the Property.

25. **Assumption Not a Novation.** Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

26. **Security Deed.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

GEORGIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3011  1/01  *(page 10 of 11 pages)*

Deed Book 12533 Pg 10

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

Signed, sealed and delivered in the presence of:

_____                    _____ (Seal)
Unofficial Witness                                   CYNTHIA ANDERSON-GRAYSON        -Borrower

_____                    _____ (Seal)
Notary Public,                    County                                            -Borrower

                                                    _____ (Seal)
                                                                                     -Borrower

                                                    _____ (Seal)
                                                                                     -Borrower

Deed Book 12533 Pg 11

GEORGIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3011 1/01  *(page 11 of 11 pages)*

EXHIBIT "A"

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 175 OF THE 15TH
DISTRICT, DEKALB COUNTY, GEORGIA, BEING LOT 23, BLOCK E, HAMES & LEVY
SUBDIVISION, AS PER PLAT RECORDED IN PLAT BOOK 15, PAGE 131, DEKALB COUNTY
RECORDS, WHICH PLAT IS HEREBY REFERRED TO AND MADE A PART HEREOF BY
REFERENCE.

Deed Book 12533 Pg    12

Linda Carter
Clerk of Superior Court Dekalb Cty. Ga.



2016128649    DEED BOOK **25772** Pg **579**

Filed and Recorded
9/6/2016 10:29:42 AM
Debra DeBerry
Clerk of Superior Court
DeKalb County, Georgia

Recording Requested By: OCWEN LOAN SERVICING, LLC
When Recorded Return To: OCWEN LOAN SERVICING, LLC 240 TECHNOLOGY DRIVE, IDAHO FALLS, ID
83401

DeKalb, Georgia

## CORPORATE ASSIGNMENT OF SECURITY DEED

SELLER'S SERVICING #:
SELLER'S LENDER ID#:                "GRAYSON"
OLD SERVICING #:   *

Date of Assignment: August 18th, 2016
Assignor: COUNTRYWIDE HOME LOANS INC BY ITS ATTORNEY IN FACT OCWEN LOAN SERVICING, LLC at
1661 WORTHINGTON ROAD, SUITE 100, WEST PALM BEACH, FL 33409
Assignee: THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK AS TRUSTEE FOR THE CWABS,
INC., ASSET-BACKED CERTIFICATES, SERIES 2002-BC1 at C/O OCWEN LOAN SERVICING, LLC , 1661
WORTHINGTON ROAD, STE 100, WEST PALM BEACH, FL 33409

Executed By: CYNTHIA ANDERSON GRAYSON  To: DECISION ONE MORTGAGE COMPANY, LLC
Date of Security Deed: 09/14/2001 Recorded: 10/09/2001 in Book/Reel/Liber: 12533 Page/Folio: 1 as Instrument
No.: 2001-0131417  In the County of DeKalb, State of Georgia.

Property Address: 1689 BRAEBURN DR, ATLANTA, GA 30316

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said Assignor hereby assigns unto the above named Assignee, the said
Security Deed having an original principal sum of $79,000.00 with interest, secured thereby, and the full benefit of all
the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and
conveys unto the said Assignee, the Assignor's interest under the Security Deed.

TO HAVE AND TO HOLD the said Security Deed, and the said property unto the said Assignee forever, subject
to the terms contained in said Security Deed.

COUNTRYWIDE HOME LOANS INC BY ITS ATTORNEY IN FACT OCWEN LOAN SERVICING, LLC
On _____AUG 1 9 2016_____

By: _____          By _____
Authorized Signer   Jennifer Price          Gerard Morrone
                                            Authorized Signer

THE FOLLOWING PERSONS HAVE WITNESSED THE EXECUTION OF THIS DOCUMENT

WITNESS
_____
Ashley E. Minus

NOTARY WITNESS

CORPORATE ASSIGNMENT OF SECURITY DEED Page 2 of 2

STATE OF  Pennsylvania
COUNTY OF Montgomery

Subscribed and sworn to (or affirmed) before me on _____ **AUG 1 9 2015** _____ by _____ **Jennifer Price** _____
Authorized Signer, & _____ **Gerard Morrone** _____ , Authorized Signer, COUNTRYWIDE HOME LOANS INC
BY ITS ATTORNEY IN FACT OCWEN LOAN SERVICING, LLC proved to me on the basis of satisfactory evi-
dence to be the person(s) who appeared before me.

WITNESS my hand and official seal.

_____
**Mildred Mitchell**
Notary Expires _____

```
COMMONWEALTH OF PENNSYLVANIA
          NOTARIAL SEAL
     Mildred Mitchell, Notary Public
Upper Dublin Twp., Montgomery County
My Commission Expires May 4, 2020
```

(This area for notarial seal.)

2019086720  DEED BOOK 27590 Pg 704
Filed and Recorded: 6/3/2019 11:23:00 AM
Recording Fee: $7.00
Prepared By:
9578415599
7067927936

Prepared By and Return To:

Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(727) 497-4650

Space above for Recorder's use _____

Loan No:

## CORRECTIVE ASSIGNMENT OF SECURITY DEED
***This Assignment is being recorded to correct and replace the Assignment recorded on 04/28/2004 as
Book/Page/Instrument# 16067/362/2004-0090788 in the records of the Clerk of DeKalb County, GA to
complete the Assignor***

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the
undersigned, **DECISION ONE MORTGAGE COMPANY, LLC**, whose address is **636 GRAND REGENCY
BLVD., BRANDON, FL 33510**, (ASSIGNOR), does hereby grant, assign and transfer to **COUNTRYWIDE
HOME LOANS, INC.**, whose address is **2505 W. CHANDLER BLVD., BUILDING D, CHANDLER, AZ
85224**, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain
Security Deed, together with the certain note(s) described therein with all interest, all liens, and any rights due or to
become due thereon.

Date of Security Deed: 9/14/2001
Original Loan Amount: $79,000.00
Executed by (Borrower(s)): **CYNTHIA ANDERSON-GRAYSON**
Original Lender: **DECISION ONE MORTGAGE COMPANY, LLC**
Filed of Record:  In Book 12533, Page 1
Document/Instrument No: **2001-0131417** in the Recording District of **DEKALB, GA**, Recorded on 10/9/2001.

Property more commonly described as: **1699 BRAEBURN DR, ATLANTA, GEORGIA 30316**

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board
of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: May 20, 2019

**DECISION ONE MORTGAGE COMPANY, LLC**

By: Kecia McPherson
Title: Vice President

Witness Name: MARIANNA SPIZZIERI

Witness Name: MICHAEL BANNAS

2019086720  DEED BOOK 27590 Pg 705
Debra DeBerry
Clerk of Superior Court
DeKalb County, Georgia

> A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of _Illinois_
County of _Cook_

On _May 20, 2019_, before me, _Debra A Vlasz_, a Notary Public, personally appeared _Kecia McPherson, Vice President_ of/for **DECISION ONE MORTGAGE COMPANY, LLC**, personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of _Illinois_ that the foregoing paragraph is true and correct. I further certify _Kecia McPherson_ signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

(Notary Name): _Debra A Vlasz_
My commission expires: _7-16-2021_

```
OFFICIAL SEAL
DEBRA A VLASZ
Notary Public – State of Illinois
My Commission Expires July 16, 2021
```

Recordation Requested by:
When Recorded Mail To:
Ocwen Loan Servicing, LLC
1661 Worthington Road, Suite 100
West Palm Beach, FL  33409
56709142034442
Attorney Code: 00078



2012060729    DEED BOOK 22940 Pg 573

Filed and Recorded:
3/23/2012 12:57:47 PM
Debra DeBerry
Clerk of Superior Court
DeKalb County, Georgia

## ASSIGNMENT OF DEED TO SECURE DEBT
## GEORGIA

This **ASSIGNMENT OF DEED TO SECURE DEBT** from **DECISION ONE MORTGAGE COMPANY LLC,** whose address is c/o Ocwen Loan Servicing, LLC. 1661 Worthington Road, Suite 100, West Palm Beach, FL 33409 ("Assignor") to **THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK, AS TRUSTEE UNDER THE POOLING AND SERVICING AGREEMENT DATED AS OF JANUARY 1, 2002 ASSET-BACKED CERTIFICATES, SERIES 2002-BC1** whose address is c/o Ocwen Loan Servicing, LLC. 1661 Worthington Road, Suite 100, West Palm Beach, FL 33409 ("Assignee").

For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Assignor does by these presents hereby grant, bargain, sell, assign, transfer and set over unto the Assignee, its successors, transferees and assigns forever, all of the rights, title and interest of said Assignor in and to the following instruments describing land therein, duly recorded in the Office of the County Recorder of **DEKALB** County, State of **GEORGIA**, as follows:

Grantor: CYNTHIA ANDERSON-GRAYSON
Grantee:    MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ACTING SOLELY AS NOMINEE FOR DECISION ONE MORTGAGE COMPANY LLC
Document Date:  SEPTEMBER 14, 2001
Amount: $ 79,000.00
Date Recorded:  OCTOBER 09, 2001
Book/Volume/Docket/Liber:  12533
Page Number: 1
Instrument No: 2001-0131417
Property Address:  1699 BRAEBURN DRIVE SE, ATLANTA, GA

This Assignment is made without recourse.

DATED:  MARCH 08, 2012

**ATTESTED BY:**

**DECISION ONE MORTGAGE COMPANY LLC
BY ITS ATTORNEY IN FACT AND SERVICER IN FACT
OCWEN FEDERAL BANK FSB
BY ITS SUCCESSOR IN INTEREST
OCWEN LOAN SERVICING, LLC**

NAME: Yamati Martinez
TITLE:  Contract Manager

BY:
NAME: Leticia N. Arias
TITLE:  Contract Manager

Witness:

**POA RECORDED ON: AUGUST 07, 2000
INSTRUMENT NO: 20000087027
BOOK: 11517          PAGE: 184**

(1)
Christina T. Daugirdas

STATE OF FLORIDA          )
                                          )SS.
COUNTY OF PALM BEACH   )

(2)
Debra Spruill

The foregoing instrument was acknowledged before me on this 8TH day of MARCH, 2012, by Leticia N. Arias, Contract Manager at Ocwen Loan Servicing, LLC Successor In Interest to Ocwen Federal Bank, FSB, Attorney-in-Fact and servicer in fact for **DECISION ONE MORTGAGE COMPANY LLC,** on behalf of the company.  He/She is personally known to me.

Notary Public –    Harrison Whittaker

Prepared By: Nadine Alvarez
Ocwen Loan Servicing, LLC
1661 Worthington Road, Suite 100
West Palm Beach, FL  33409
Phone Number: 561-682-8835



Notary Public State of Florida
Harrison Whittaker
My Commission EE 167052
Expires 02/08/2016

2017115727    DEED BOOK **26399** Pg **467**

Filed and Recorded:
7/28/2017 11:51:03 AM
Debra DeBerry
Clerk of Superior Court
DeKalb County, Georgia

After recording, please return to:
Weissman PC
ATTN: Lender Services
One Alliance Center, 4th Floor, 3500 Lenox Rd.
Atlanta, Georgia 30326
WNCW File No. 01-7237-00-9276

VICING, LLC

:RVICING, LLC 240 TECHNOLOGY DRIVE, IDAHO FALLS, ID83401

## CORPORATE ASSIGNMENT OF SECURITY DEED

DeKalb, Georgia
SELLER'S SERVICING #:I        "GRAYSON"
SELLER'S LENDER ID#: 
OLD SERVICING #:

Date of Assignment: June 19th, 2017

Assignor: THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK AS TRUSTEE FOR THE CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2002-BC1, BY ITS ATTORNEY IN FACT OCWEN LOAN SERVICING, LLC at  1661 WORTHINGTON ROAD, SUITE 100, WEST PALM BEACH, FL  33409

Assignee: CITIBANK, N.A., AS TRUSTEE OF NRZ PASS-THROUGH TRUST VI at C/O OCWEN LOAN SERVICING, LLC, 1661 WORTHINGTON RD, SUITE 100, WEST PALM BEACH, FL  33409

Executed By: CYNTHIA ANDERSON-GRAYSON  To: DECISION ONE MORTGAGE COMPANY, LLC

Date of Security Deed:  09/14/2001 Recorded:  10/09/2001  In Book/Reel/Liber: 12533 Page/Folio: 1 as Instrument No.: 2001-0131417  In the County of DeKalb, State of Georgia.

Property Address: 1699 BRAEBURN DR, ATLANTA, GA  30316

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Security Deed having an original principal sum of $79,000.00 with interest, secured thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under the Security Deed.

TO HAVE AND TO HOLD the said Security Deed, and the said property unto the said Assignee forever, subject to the terms contained in said Security Deed.

THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK AS TRUSTEE FOR THE CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2002-BC1, BY ITS ATTORNEY IN FACT OCWEN LOAN SERVICING, LLC
On  **JUN 1 9 2017**

By: 
Name: Jamell Strachan,
Title: Vice President

Pursuant to Power of Attorney recorded
simultaneously herewith.

DEED BOOK 26399 Pg 468
Debra DeBerry
Clerk of Superior Court
DeKalb County, Georgia

CORPORATE ASSIGNMENT OF SECURITY DEED Page 2 of 2

THE FOLLOWING PERSONS HAVE WITNESSED THE EXECUTION OF THIS DOCUMENT:

WITNESS

Martice L. Pitts

NOTARY WITNESS

STATE OF FLORIDA
COUNTY OF PALM BEACH

Subscribed and sworn to (or affirmed) before me on ___JUN 1 9 2017___, by Jameil Strachan, Vice President proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

WITNESS my hand and official seal,

Shiline King
Notary Expires: /SEP 1 8 2020

Notary Public State of Florida
Shiline King
My Commission GG 031114
Expires 09/18/2020

(This area for notarial seal)

2018051845    DEED BOOK **26799** Pg **344**

Filed and Recorded:
3/14/2018 9:38:30 AM
Debra DeBerry
Clerk of Superior Court
DeKalb County, Georgia

Return to:
RubinLublin,LC
3145 Avalon Ridge Place
Suite 100
Peachtree Corners, GA 30071
Recording Requested By: NATIONSTAR MORTGAGE DBA MR. COOPER
: Bernardo Hernandez, NATIONSTAR MORTGAGE DBA MR. COOPER 8950 CYPRESS
WATERS BLVD, COPPELL, TX  75019

## CORPORATE ASSIGNMENT OF SECURITY DEED

DeKalb, Georgia
**SELLER'S SERVICING #**         "ANDERSON-GRAYSON"

Date of Assignment: February 27th, 2018
Assignor: CITIBANK, N.A., AS TRUSTEE OF NRZ PASS-THROUGH TRUST VI, BY NATIONSTAR MORTGAGE
LLC AS IT'S ATTORNEY-IN-FACT at  8950 CYPRESS WATERS BLVD, COPPELL, TX  75019
Assignee: U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE
NRZ PASS-THROUGH TRUST X at 425 WALNUT STREET, CINCINNATI, OH  45202

Executed By: CYNTHIA ANDERSON-GRAYSON  To: DECISION ONE MORTGAGE COMPANY, LLC
Date of Security Deed: 09/14/2001 Recorded: 10/09/2001 in Book/Reel/Liber: 12533 Page/Folio: 1 as Instrument
No.: 2001-0131417  In the County of DeKalb, State of Georgia.

Property Address: 1699 BRAEBURN DR, ATLANTA, GA  30316

   KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said
Security Deed having an original principal sum of $79,000.00 with interest, secured thereby, and the full benefit of all
the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and
conveys unto the said Assignee, the Assignor's interest under the Security Deed.

   TO HAVE AND TO HOLD the said Security Deed, and the said property unto the said Assignee forever, subject
to the terms contained in said Security Deed.

CITIBANK, N.A., AS TRUSTEE OF NRZ PASS-THROUGH TRUST VI, BY NATIONSTAR MORTGAGE LLC AS IT'S
ATTORNEY-IN-FACT
On February 27th, 2018

By:
TSEDALE ALEMU, Vice-President

THE FOLLOWING PERSONS HAVE WITNESSED THE EXECUTION OF THIS DOCUMENT:

WITNESS

Daniela Horvath

NOTARY WITNESS
Omar Basped

OMAR BASPED
Notary Public, State of Texas
Comm. Expires 12-04-2019
Notary ID 130458850

STATE OF Texas
COUNTY OF Dallas

Subscribed and sworn to (or affirmed) before me on February 27th, 2018, by TSEDALE ALEMU , proved to me on
the basis of satisfactory evidence to be the person(s) who appeared before me.

WITNESS my hand and official seal,

OMAR BASPED
Notary Expires: 12/04/2019  #130458850

OMAR BASPED
Notary Public, State of Texas
Comm. Expires 12-04-2019
Notary ID 130458850

(This area for notarial seal)

**2019078080**    DEED BOOK **27554** Pg **192**

Filed and Recorded:
5/17/2019 2:50:47 PM
Debra DeBerry
Clerk of Superior Court
DeKalb County, Georgia

Prepared By and Return To:
Kathleen Collins
Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(727) 497-4650

Loan No:

Space above for Recorder's use

*Rec. 1ˢᵗ*

## ASSIGNMENT OF SECURITY DEED

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR THE NRZ PASS-THROUGH TRUST X**, whose address is **1345 AVENUE OF THE AMERICAS, 45TH FLOOR, NEW YORK, NEW YORK 10105**, (ASSIGNOR), does hereby grant, assign and transfer to **MTGLQ INVESTORS, L.P.**, whose address is **2001 ROSS AVENUE SUITE 2800, DALLAS, TEXAS 75201**, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain Security Deed, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Security Deed: 9/14/2001
Original Loan Amount: $79,000.00
Executed by (Borrower(s)): **CYNTHIA ANDERSON-GRAYSON**
Original Lender: **DECISION ONE MORTGAGE COMPANY, LLC**
Filed of Record: In Book **12533**, Page **1**,
Document/Instrument No: 2001-0131417 in the Recording District of **DEKALB, GA**, Recorded on 10/9/2001.

Property more commonly described as: **1699 BRAEBURN DR, ATLANTA, GEORGIA 30316**

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date:    **FEB 2 8 2019**

**U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR THE NRZ PASS-THROUGH TRUST X, BY MTGLQ INVESTORS, L.P., ITS ATTORNEY-IN-FACT**

By: **JENNY LAY**
Title: **VICE PRESIDENT**

Witness Name: ~~Jim DiPaola~~

Witness Name: ~~Brad Razzano~~

DEED BOOK 27554 Pg 193
Debra DeBerry
Clerk of Superior Court
DeKalb County, Georgia

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of        **TEXAS**
County of      **DALLAS**

Natalie Flowers

On __FEB 2 8 2019__, before me, _____, a Notary Public, personally appeared **JENNY LAY, VICE PRESIDENT of/for MTGLQ INVESTORS, L.P., AS ATTORNEY-IN-FACT FOR U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR THE NRZ PASS-THROUGH TRUST X**, personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of TEXAS that the foregoing paragraph is true and correct. I further certify **JENNY LAY** signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

(Notary Name): _____ Natalie Flowers _____
My commission expires: __NOV 2 9 2022__

Natalie Flowers
My Commission Expires
11/29/2022
ID No. 124227602

**2019078081** DEED BOOK **27554** Pg **194**

Filed and Recorded:
5/17/2019 2:50:47 PM
Debra DeBerry
Clerk of Superior Court
DeKalb County, Georgia

Prepared By and Return To:
Kathleen Collins
Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(727) 497-4650

_____ | _____ Space above for Recorder's use _____

Loan No:

*Rec. 2nd*

## ASSIGNMENT OF SECURITY DEED

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **MTGLQ INVESTORS, L.P.**, whose address is **2001 ROSS AVENUE SUITE 2800, DALLAS, TEXAS 75201**, (ASSIGNOR), does hereby grant, assign and transfer to **U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE CHALET SERIES III TRUST**, whose address is **7114 E. STETSON DR., SUITE 250, SCOTTSDALE, ARIZONA 85251**, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain Security Deed, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Security Deed: 9/14/2001
Original Loan Amount: $79,000.00
Executed by (Borrower(s)): **CYNTHIA ANDERSON-GRAYSON**
Original Lender: **DECISION ONE MORTGAGE COMPANY, LLC**
Filed of Record: In Book 12533, Page 1,
Document/Instrument No: 2001-0131417 in the Recording District of **DEKALB, GA**, Recorded on 10/9/2001.

Property more commonly described as: **1699 BRAEBURN DR, ATLANTA, GEORGIA 30316**

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date:  **FEB 2 8 2019**

**MTGLQ INVESTORS, L.P.**

By: **ANDREA RHINEHARDT**
Title: **VICE PRESIDENT**

Witness Name: _____ Javier Gomez

Witness Name: _____ Paul Carrigan

DEED BOOK 27554 Pg 195
Debra DeBerry
Clerk of Superior Court
DeKalb County, Georgia

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of        **TEXAS**
County of       **DALLAS**

On   **FEB 2 8 2019**              , before me,      **Michael Franco**      , a Notary Public, personally appeared **ANDREA RHINEHARDT, VICE PRESIDENT** of/for **MTGLQ INVESTORS, L.P.**, personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of **TEXAS** that the foregoing paragraph is true and correct. I further certify **ANDREA RHINEHARDT** signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

(Notary Name):      Michael Franco
My commission expires:  MAY 0 8 2021

MICHAEL FRANCO
Notary Public State of Texas
My Commission# 131120829
My Comm. Exp. May. 08, 2021

2019107989  DEED BOOK 27680 Pg 759
Filed and Recorded: 7/23/2019 10:53:00 AM
Recording Fee: $9.00
Prepared By:
9578415599
7067927936

Prepared By and Return To:

Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(727) 497-4650

_____ Space above for Recorder's use _____

Loan No:

## ASSIGNMENT OF SECURITY DEED

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF CHALET SERIES III TRUST, whose address is 7114 E. STETSON DR., SUITE 250, SCOTTSDALE, ARIZONA 85251, (ASSIGNOR), does hereby grant, assign and transfer to U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE CABANA SERIES III TRUST, whose address is 7114 E. STETSON DR., SUITE 250, SCOTTSDALE, ARIZONA 85251, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain Security Deed, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Security Deed: 9/14/2001
Original Loan Amount: $79,000.00
Executed by (Borrower(s)): CYNTHIA ANDERSON-GRAYSON
Original Lender: DECISION ONE MORTGAGE COMPANY, LLC
Filed of Record:  In Book 12533, Page 1
Document/Instrument No: 2001-0131417 in the Recording District of DEKALB, GA, Recorded on 10/9/2001.

Property more commonly described as: 1699 BRAEBURN DR, ATLANTA, GEORGIA 30316

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date:  6/27/2019

US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF CHALET SERIES III TRUST, BY MERIDIAN ASSET SERVICES, LLC, ITS ATTORNEY-IN-FACT

By: MARK WATERMAN                                    Witness Name: THIMAO KRESHPANJI
Title: VICE PRESIDENT

POA BATCH #11126
POA WAS RECORDED IN DEKALB COUNTY, GA
ON 12/24/2018 /INST: 2018202416 /BK: 27313 /PG: 85          Witness Name: DIEP DOAN

2019107989  DEED BOOK 27680 Pg 760
Debra DeBerry
Clerk of Superior Court
DeKalb County, Georgia

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of       **FLORIDA**
County of      **PINELLAS**

On 6/27/2019, before me, **VERONIQUE J. SIMS**, a Notary Public, personally appeared **MARK WATERMAN, VICE PRESIDENT of/for MERIDIAN ASSET SERVICES, LLC, AS ATTORNEY-IN-FACT FOR US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF CHALET SERIES III TRUST**, personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.  I certify under PENALTY OF PERJURY under the laws of the State of **FLORIDA** that the foregoing paragraph is true and correct.  I further certify **MARK WATERMAN** signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

(Notary Name): **VERONIQUE J. SIMS**
My commission expires: 1/21/2022

VERONIQUE J SIMS
Commission # GG 177066
Expires January 21, 2022
Bonded Thru Budget Notary Services

**2020027397  DEED BOOK 28091 Pg 720**
**Filed and Recorded: 2/5/2020 2:37:00 PM**
**Recording Fee: $25.00**
**Prepared By:**
**9578415599**
**7067927936**

Prepared By and Return To:

Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(727) 497-4650

_____    Space above for Recorder's use _____ _____
Loan No:

### RESCISSION OF ASSIGNMENT OF SECURITY DEED

Through inadvertence and mistake the undersigned executed an Assignment of Security Deed referenced below in the official records of said county. The undersigned state that they hereby INVALIDATE and NULLIFY the assignment to the same extent and effect as though the assignment had never been issued and recorded.

Filed of Record:      **3/23/2012** In Book/Liber/Volume **22940**, Page **573**,
                      Document/Instrument No: **2012060729** in the Recording District of **DeKalb, GA**
Assignor:             **HSBC FINANCE CORPORATION, SUCCESSOR BY MERGER TO DECISION
                      ONE MORTGAGE COMPANY, LLC**
Assignee:             **THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK AS
                      TRUSTEE UNDER THE POOLING AND SERVICING AGREEMENT DATED
                      AS OF JANUARY 1, 2002 ASSET-BACKED CERTIFICATES, SERIES 2002-BC1**

The Assignment of Security Deed refers to the following described Security Deed:
Borrower(s):          **CYNTHIA ANDERSON-GRAYSON**
Lender:               **DECISION ONE MORTGAGE COMPANY, LLC**
Filed of Record:      **10/9/2001** in Book/Liber/Volume **12533**, Page **1**, Instrument No: **2001-0131417** in the
                      Recording District of **DEKALB, GA.**

Property more commonly described as: **1699 BRAEBURN DR, ATLANTA, GEORGIA 30316**

2020027397  DEED BOOK 28091 Pg 721
Debra DeBerry
Clerk of Superior Court
DeKalb County, Georgia

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: _January 16, 2020_

HSBC FINANCE CORPORATION, SUCCESSOR BY MERGER TO DECISION ONE MORTGAGE
COMPANY, LLC

_Kecia McPherson_

By: _Kecia McPherson_
Title: _Vice President_

Witness Name: _Joe Boes_

Witness Name: _Benita Cacioppo_

---

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of _Illinois_
County of _Cook_

On _January 16, 2020_, before me, _Debra A. Vlasz_, a Notary Public, personally appeared _Kecia McPherson, Vice President_ of/for HSBC FINANCE CORPORATION, SUCCESSOR BY MERGER TO DECISION ONE MORTGAGE COMPANY, LLC, personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.  I certify under PENALTY OF PERJURY under the laws of the State of _Illinois_ that the foregoing paragraph is true and correct.  I further certify _Kecia McPherson_ signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

(Notary Name): _Debra A Vlasz_
My commission expires: _7-16-2021_

OFFICIAL SEAL
DEBRA A VLASZ
Notary Public – State of Illinois
My Commission Expires July 16, 2021